GEORGE SCOFFIN, Respondent, v. ABERNATHY
FURNITURE COMPANY, Appellant.

**Kansas City Court of Appeals, June 13, 1914.**

1. **NEGLIGENCE: Assumption of Risk: Safe Place to Work.**
   The plaintiff sued to recover damages for personal injuries
   sustained, while unloading a car of steel grave vaults, that
   had been shipped to defendant. While unloading the vaults
   one of them fell by reason of having been improperly loaded
   and plaintiff was injured. *Held*, that the injury of plaintiff
   was due to one of the risks of the employment he assumed.

2. ——————: ——————: ——————. Where experienced and skillful
   men are sent by the master to work in a place where the
   dangers and risks are obvious, and where they are left free
   to adopt and follow their own plans, they assume the risk of
   such employment.

Appeal from Jackson Circuit Court.—*Hon. E. E.
Porterfield*, Judge.

REVERSED.

*Battle McCardle* and *Frank L. Barry* for appel-
lant.

(1) The duty was placed on plaintiff by the char-
acter of the work being done to make his own inspec-
tion. Hulse v. Tel. Co., 164 Mo. App. 131; Fleeman
v. Bemis Bag Co., 195 Mo. App. 598; Corby v. Tel. Co.,
231 Mo. 417; Bradley v. Tea Co., 213 Mo. 331. (2)
Plaintiff knew of any danger due to condition of con-
tents of car and defendant did not, and where danger
is known to servant master is not negligent in failing
to warn him. Hirsch v. Freund Bros. Co., 129 Mo.
App. 1060; Herbert v. Mound City Boot & Shoe Co.,
90 Mo. App. 305; Nugent v. Milling Co., 131 Mo. 241.
(3) Under all the testimony plaintiff was not entitled
to recover. Dunn v. Railroad, 189 Mass. 62, 75 N. E.
75; Rooney v. Railroad, 208 Mass. 106, 94 N. E. 288.

*Martin J. O'Donnell* and *Horace Kimbrell* for respondent.

(1) The carload being, by reason of the failure to block the grave vaults, in a condition not reasonably safe at the time plaintiff was assigned to work therein, it is immaterial how or by what means the unsafe condition arose, since it was the absolute duty of defendant to exercise ordinary care to provide plaintiff with a reasonably safe place in which to work. Shearman & Redfield on Negligence (5 Ed.), sec. 194; Vaughan v. Railroad, 61 Atl. 695; Gregg v. Railroad, 147 Ill. 550; Clark v. Foundry Co., 234 Mo. 436; Blankenship v. Paint Co., 154 Mo. App. 492. (2) A master may not delegate duties personal to himself to a servant; neither can he delegate such duties to the servants of a shipper or carrier. Telban v. Bullard, 94 Fed. 781; Labatt, Master & Servant, sec. 1514; Bender v. Railroad, 137 Mo. 240; Tateman v. Railroad, 96 Mo. App. 448. (3) The cases cited by defendant do not correctly declare the law in this jurisdiction where the rule that the master must perform his duty to see that the place to which he assigns his servant to work is reasonably safe is impersonal and all embracing applying alike to all masters and similarly protecting all servants. Corly v. Telephone Co., 231 Mo. 439; D'Almeida v. Railroad, 209 Mass. 81; Spaulding v. Co., 159 Mass. 587. (4) The instructions given for plaintiff were correct. Every conceivable phase of defendant's defenses were submitted in the ten instructions given at its request and no error was committed in refusing any. Doyle v. Trust Co., 140 Mo. 10; Buck v. Railroad, 108 Mo. 179.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries he alleges were caused by the negligent failure of defendant, his master, to exercise reasonable care to furnish him a reasonably

safe place in which to work. The answer is a general denial and pleas of assumed risk and contributory negligence. Verdict and judgment were for plaintiff. Defendant appealed and argues that error was committed in the overruling of its demurrer to the evidence. Defendant is an extensive dealer in furniture in Kansas City and plaintiff a teamster of more than twenty years experience who had been working for defendant continuously for four years before his injury, driving a team, and as part of his duties, helping to unload cars of bulky and heavy merchandise. His injury occurred while he and two other employees of defendant were unloading steel grave vaults from a car which had been shipped to defendant from an eastern city and was standing on a team track about 300 feet from defendant's place of business. That morning the foreman of plaintiff ordered him to haul the grave vaults from the car and told him that other workmen would be sent over to help him unload. Two were sent, one, William Rankin, described as defendant's "head man in loading and unloading cars," and the other a laborer of experience in that kind of work. There is no complaint that the three men were not a sufficient force, nor that they were lacking in experience or skill in handling heavy and bulky freight, but plaintiff claims that none of them had had experience in unloading a carload of grave vaults as this was the first carload defendant had received. They had handled smaller lots of such vaults and were familiar with their size, form, weight, and the manner of handling them, though not with the customary method of loading them in car lots. Each vault was seven feet long, three feet wide, three feet deep, weighed 450 pounds and was encased in a burlap covering to protect its finished surfaces. Its top or lid projected two inches beyond its sides and ends and when a vault was standing on end the protecting flange of the top prevented the vault from standing

perpendicularly and caused its top end to lean five or six inches to one side of a perpendicular line. There were fifty vaults in the car, half in one end and half in the other, the vaults in each division standing on end in parallel rows with their top sides facing the car end and their bottoms facing the middle of the car in which there was an open space between the two divisions of the load. Each row contained three vaults placed close togther and transverse braces consisting of 2x4 timbers had been placed across the face of each row, one at the top and one at the bottom, and spiked at their ends to the sides of the car. Each row, because of the projecting flanges of the vaults, leaned towards the middle of the car and the braces were put in to keep its members in place and to prevent them toppling forward during the transportation. The sole criticism of this method of loading offered in the evidence of plaintiff relates to the omission of the loaders to place another transverse 2x4 timber under the forward edge of each row and nail it to the car floor in order that the vaults might stand perpendicularly and not be so likely to fall over on the unloaders who necesarrily would have to begin their operations in the open space in the middle of the car and if such chocking timbers were omitted would be compelled to face and work upon rows of vaults leaning towards them. In the present instance the loaders had put in no blocking and the unloaders were compelled to work on successive rows of vaults leaning towards them. They removed all of the load from the south end of the car and were working on the second row in the north end when the accident occurred. Much is said in the evidence about the condition of the transverse braces but as we view the case the fact that many of them were found to have been broken during the transportation could have had no relation to the cause of the injury, since it is conceded the unloaders had removed both braces in front

of the row they were working upon and were engaged in pulling the middle vault over onto a truck when one of the other vaults in that row fell forward on plaintiff and injured him.

Plaintiff claims that the vault which fell was wholly disengaged from its neighbor and attributes its fall to the jar produced by the middle vault falling over on the truck, while his colaborers, who were introduced as witnesses by defendant, say that handles on the sides of the two vaults had become engaged in a way that caused the pulling over of the middle vault to bring the other over with it. Plaintiff's version, which would excuse him and his colaborers from the imputation of negligence amounting to gross carelessness and would attribute the fall of the vault to its instability caused by the lack of proper chocking, is reasonable and for the purposes of the demurrer to the evidence will be accepted as true.

But with this concession, must it be said that the evidence of plaintiff, howsoever favorably regarded, accuses defendant, his master, of negligence that should be regarded as the proximate cause of the injury? What did defendant fail to do that a reasonably careful and prudent master in his situation would have done for the protection of his servants? Plaintiff says, first, that a prudent master having proper regard for his servants would not have negligently loaded the car, but there is no proof that defendant had anything to do with that operation and the only permissible inference that may be drawn from all the evidence is that the car was loaded by the vendor of defendant and that the officers of defendant had no knowledge, or reason to believe, that the loading had not been done in a reasonably careful and skillful manner. But that the question of final consequence in the merits of the case may not be confused or misunderstood we shall concede, for argument, that defendant was responsible for the load-

ing of the car and, therefore, knew that it had been negligently loaded. Still such negligence could not be treated otherwise than as a remote cause of the injury, as merely furnishing a condition which called for the exercise of care commensurate with its peculiar dangers. [Mullery v. Telephone Company, decided at this term, not yet reported.] Defendant was not bound to abandon its property and refuse to unload the vaults because they had been loaded in a negligent and dangerous way. It had a right to employ men to unload a dangerously loaded car, to work in a place made unsafe by former negligence, just as the owner of a negligently constructed building would have the right to employ men to tear it down. This is not a case where an inexperienced workman is sent into a place of danger without notice or warning or where an experienced workman is kept in ignorance of concealed dangers or risks, but is a case where experienced and skillful workmen were sent by the master to work in a place where the dangers and risks were obvious, and were left free to adopt and follow their own plans and method of work. [Roberts v. Tel. Co., 166 Mo. 370; Corby v. Tel. Co., 231 Mo. 417; Miller v. Tel. Co., 141 Mo. App. 131; Fleeman v. Bag Co., 159 Mo. App. 593; Bradley v. Tea Co., 213 Mo. l. c. 331.]

As soon as they opened the car the men could, and did, see that the rows were tilted forward and they knew the cause thereof and the consequent risk as well as they would have known them had they been told of them by an inspector previously sent to examine the load for such defects. All of the inspections that could have been made would have revealed nothing beyond the patent facts that the rows had not been chocked and that the long, slim, up-ended and tilted steel boxes would tip over if the men were not careful in handling them. We do not perceive on what ground it may be said that the duty devolving

upon defendant to exercise reasonable care to provide a reasonably safe place for its servants required more, under such circumstances, than the sending of experienced and competent men to unload the vaults. There was nothing else the most prudent master could do. A row of vaults could not have been blocked up to a perpendicular position with the rows behind it leaning forward and, therefore, all of the vaults except those in the last rows would have had to be removed before any row could be blocked. It is true the master cannot delegate to another the performance of his primary duty towards his servant, but defendant was guilty of no such attempted evasion of duty. It had a right to employ servants to do dangerous work but had no right to enhance the natural and incidental dangers of such employment by any negligence of its own. The natural risks of such employment are assumed by the servant and in this case the assumed risks were those which were obvious and became known to those experienced and competent servants the moment they opened the door of the car and saw the manner in which the vaults had been placed therein.

It is idle to speak of them as inexperienced because they had unloaded no other carload of grave vaults. There could be no difference between a steel grave vault stood on end and any other long, slim, heavy box placed in such position. These men were fellow servants, were their own masters, so far as the method to be followed in unloading the vaults was concerned, and the injury of plaintiff clearly was due to one of the risks of the employment he assumed. The court erred in not sustaining a demurrer to the evidence.

Reversed. All concur.